Douglas F. Johnson, Esq.
EARP COHN P.C.
20 Brace Road, 4th Floor
Cherry Hill, NJ 08034
(856) 354-7700

Attorneys for Plaintiff
Ortho Biotech Products, L.P.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORTHO BIOTECH PRODUCTS, L.P.,

                 Plaintiff,

           - v. -

AMGEN INC.,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**Civil Action No. _____**

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), and upon its Motion for Expedited Discovery, plaintiff Ortho Biotech Products, L.P. by their attorneys, direct the following requests for documents to defendant Amgen Inc. and demand that Amgen produce, in the time directed by the Court, or Court rules, responsive documents for inspection and copying at the offices of Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York, NY 10036.

## DEFINITIONS

1.       "Ortho" means Ortho Biotech Products, L.P., and its officers,

directors, agents, servants, employees, attorneys, accountants, corporate parents, affiliates, or other persons acting on their behalf for purposes of these requests.

2. "Amgen" means Amgen Inc., and its officers, directors, agents, servants, employees, attorneys, accountants, corporate parents, affiliates, or other persons acting on their behalf for purposes of these requests.

3. "PROCRIT" is the branded version of epoetin alfa marketed and sold by Ortho.

4. "EPOGEN" is the branded version of epoetin alfa marketed and sold by Amgen.

5. "ARANESP" is the branded version of darbepoetin alfa marketed and sold by Amgen.

6. "NEUPOGEN" is the branded version of filgrastim marketed and sold by Amgen.

7. "NEULASTA" is the branded version of pegfilgrastim marketed and sold by Amgen.

8. "LEUKINE" is the branded version of sargramostim marketed and sold by Berlex Inc.

9. "CERA" or "Continuous Erythropoietin Receptor Activator" is the anti-anemia drug manufactured and/or tested by Roche.

10. "RBCGF drugs" refers to red blood cell growth factor drugs or drugs that stimulate the production of red blood cells, including PROCRIT, EPOGEN and ARANESP.

11. "WBCGF drugs" refers to white blood cell growth factor drugs or

1217269v4

drugs that stimulate the production of white blood cells, including NEUPOGEN, NEULASTA and LEUKINE.

12. "Oncology clinics" refers to outpatient clinics that treat oncology patients and administer RBCGF drugs for the treatment of anemia associated with chemotherapy, , and/or WBCGF drugs for the treatment of chemotherapy-induced neutropenia.

13. "Bundling" and "Bundles" refers to the conditioning of incentives for WBCGF drugs and/or RBCGF drugs on achieving level(s) of RBCGF drug purchases, whether measured by dollar volume, unit volume or as a percentage of purchases.

14. "ASP" refers to the "average sales price" as defined under the Medicare Prescription Drug Improvement and Modernization Act of 2003.

15. The term "document" is used in the broadest sense consistent with Rule 34(a) of the Federal Rules of Civil Procedure. The term includes, without limitation, any written, recorded, transcribed, taped, photographic, or graphic matter, any electronically, magnetically, or digitally stored information, including, without limitation, voice mail, electronic mail, software, source code, object code or hard or floppy disc files, any other tangible things, and all copies of any of the foregoing that are different in any way from the original.

16. "Concerning" means referring to, relating to, pertaining to, describing, mentioning, evidencing or constituting.

17. "Communications" refer to all documents reflecting any verbal or written communication.

18. The terms "including," "include," or "includes" mean that the

1217269v4

following list contains illustrative examples of the types of documents responsive to the request, but the list is without limitation and does not constitute an exclusive or all-encompassing listing of every type of document responsive to the request.

19. The term "person" shall mean (a) natural persons (also referred to as "individuals"), (b) legal entities, including, without limitation, corporations, partnerships, firms, associations, professional corporations, and proprietorships, and (c) governmental bodies or agencies.

20. "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the discovery requests inclusive rather than exclusive. Use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun. The use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the discovery request documents or information that might otherwise be construed to be outside its scope.

21. Unless otherwise stated, the requests below refer to the time period from January 1, 2002 to the present.

## INSTRUCTIONS

1. Each and every document requested should be produced in its entirety, without deletions or redactions and including all attachments affixed to the document.

2. This request for production of documents seeks production of every version of the document requested, including but not limited to non-identical copies of the documents with marginalia, additional attachments, additional handwritten or typed notes, indications of carbon copies, blind carbon copies, or distribution lists, and drafts and

-4-

1217269v4

revisions of the document.

3. In the event a document is not provided because it is not presently in your possession, custody, or control, or because of a claim of privilege, immunity, or work-product protection, identify such document by providing the following information:

(a) the date the document bears, if any, and, if different, the date on which the document was created;

(b) a general description of its subject matter;

(c) the form in which the information is contained or was communicated (e.g., memorandum, e-mail, report, letter);

(d) as applicable, the author, addressee, recipient, participant, and other persons with knowledge of the information;

(e) as applicable, the reason the document is not presently in your possession, custody, or control, and a brief description of the circumstances under which the document left your possession, custody, or control;

(f) as applicable, the basis for the claim of privilege, work-product protection, or immunity;

(g) the location of any such document(s);

(h) the page range of any withheld document(s); and

(i) identification of the request number(s) that the withheld document is responsive to.

4. Each request herein shall be deemed to be continuing, and in the event that additional responsive documents are later discovered by or become known to Amgen, further response is to be made hereto without further request.

5. Unless otherwise stated, the relevant time period for these requests is January 1, 2004 to present.

1217269v4

## DOCUMENT REQUESTS

1.    All documents concerning Bundles or Bundling for oncology clinics, including without limitation all:

    (a)    marketing, business, strategic, financial or sales plans that concern Bundles or Bundling;

    (b)    minutes, notes, memoranda or summary of any meeting concerning Bundles or Bundling, and any documents concerning Bundles or Bundling presented therein;

    (c)    marketing research, surveys or analyses concerning Bundles or Bundling;

    (d)    marketing presentations, communication pieces, talking points and sales aids concerning Bundles or Bundling;

    (e)    sales training materials concerning Bundles or Bundling;

    (f)    documents provided to or used by Amgen's sales force (including National Account Managers) and reimbursement specialists that concern Bundles or Bundling;

    (g)    documents offering or implementing Bundles or Bundling, including contracts, contract addenda and/or term sheets, and all documents concerning the development and use of such documents, such as financial analyses or projections reflected therein;

    (h)    analyses concerning the actual or projected impact of Bundles or Bundling on the price, sales or market share of any RBCGF drugs or WBCGF drugs; and

    (i)    documents concerning the legal or regulatory risks associated with the Bundles, including any antitrust implications of Bundles or Bundling, including any potential monopolization or foreclosure of markets for RBCGF drugs.

    (j)    All documents concerning the relative safety and/or efficacy of ARANESP (or darbepoetin alfa) and PROCRIT (or epoetin alfa).

2.    Data sufficient to show ARANESP, EPOGEN, NEULASTA and NEUPOGEN sales volume and market share (by dollar and units) by quarter.

1217269v4

3.    All documents concerning the reimbursement afforded to oncology clinics for any RBCGF drugs or WBCGF drugs under any private health plan or Medicare, including without limitation all:

    (a)    documents concerning the difference between reimbursement for and acquisition costs of any RBCGF drugs or WBCGF drugs;

    (b)    documents concerning the volume or percentage of patients administered RBCGF drugs or WBCGF drugs in oncology clinics who are reimbursed under Medicare;

    (c)    documents concerning the incentives oncology clinics must earn on ARANESP, NEULASTA or NEUPOGEN to break even on their Medicare reimbursement;

    (d)    documents concerning the impact of ASP on the price of and market for any RBCGF drugs or WBCGF drugs;

    (e)    analyses or projections of the ASP for any RBCGF drugs or WBCGF drugs; and

4.    All documents concerning the potential entry of product(s) to compete with ARANESP, NEUPOGEN or NEULASTA in oncology clinics, including without limitation any analyses of the barriers to entry of any competitive product or the extent to which patents on ARANESP, NEUPOGEN or NEULASTA preclude entry of a competitive product.

5.    All documents comparing the attributes or aspects of the oncology clinic market for RBCGF drugs to other markets for RBCGF drugs, including without limitation, all:

    (a)    documents concerning pricing or incentives on RBCGF or WBCGF drugs that have been offered to oncology clinics but not other types of purchasers;

    (b)    documents concerning the impact of that price changes in the physician clinic market will have on pricing and demand in other markets for RBCGF drugs; and

1217269v4

(c)    documents concerning the impact of that price changes in markets other than the physician clinic market will have on pricing and demand in the physician clinic market for RBCGF drugs.

6.    Documents sufficient to show the business calendar or schedule of Joseph Turgeon and James Daly from January 1, 2005 to present.

7.    All documents concerning any presentation or communication, written or oral, made by Joseph Turgeon, James Daly or Jeffrey A. Scott, M.D. to any wholesaler, distributor, GPO, or oncology clinic concerning RBCGF drugs and WBCGF drugs since January 1, 2005.

8.    Amgen's organizational charts, including documents sufficient to determine the identity and territory of each member of Amgen's sales force and documents sufficient to determine Amgen employees involved in structuring, marketing and deploying Bundles.

Dated: October 11, 2005

**EARP COHN P.C.**

By: _____

       Douglas F. Johnson

20 Brace Road, 4th Floor
Cherry Hill, NJ 08034
Tel: (856) 354-7700
Fax: (856) 354-0766

and

**PATTERSON BELKNAP WEBB & TYLER LLP**
William F. Cavanaugh, Jr.
Erik Haas
Jeffrey D. Rotenberg
Wendy Kemp Akbar
1133 Avenue of the Americas
New York, NY 10036-6710
Tel: (212) 336-2000

-8-

1217269v4

Fax: (212) 336-2222

and

**CONSTANTINE CANNON PC**
Lloyd Constantine
Matthew L. Cantor
Reiko Cyr
Axel Bernabe
450 Lexington Avenue
New York, NY 10017
(212) 350-3700

*Attorneys for Plaintiff*
*Ortho Biotech Products, L.P.*

Of counsel:

    Kathryn A. Meisel, Esq.
    Johnson & Johnson

-9-

1217269v4