**EARP COHN P.C.**
20 Brace Road - 4th Floor
Cherry Hill, NJ  08034
(856) 354-7700
(855) 354-0766 (Fax)

**BY:    DOUGLAS F. JOHNSON, ESQUIRE**

Attorneys for Plaintiff
Ortho Biotech Products, L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ORTHO BIOTECH PRODUCTS, L.P., | : | Civil No. 05-cv-4850 (SRC-JJH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMGEN INC. and AMGEN USA INC., | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM REGARDING
ADMISSIBILITY OF CUSTOMER COMPLAINTS**

Plaintiff Ortho Biotech Products, L.P. ("Ortho") submits this memorandum in support of its request that the Court reconsider its ruling from the bench yesterday regarding the admissibility of customer complaints regarding Amgen's APC contract.  The Third Circuit has clearly held that customer complaints, which might otherwise constitute hearsay, are admissible as evidence of the customers' states of mind regarding why they were (or were not) making product purchases.  See Callahan v. A.E.V., Inc., 182 F.3d 237 (3d Cir. 1999).  As noted by Plaintiff's counsel during argument on the objection to the admission of such evidence, these complaints go to the customers' states of mind—i.e., whether they feel coerced by the contract into purchasing Amgen's Red Blood Cell Growth Factor ("RBCGF") drug Aranesp, because of

the monetary penalties in the contract relating to the purchase of Amgen's monopoly White Blood Cell Growth Factor ("WBCGF") drugs, Neulasta and Neupogen.

Defendants Amgen, Inc. and Amgen USA, Inc. ("Amgen") contend that oncology clinics are not coerced to buy Aranesp.

> Secondly, **this case is not about coercion.  There's no coercion** or tie in agreement here[.]   [Y]ou may recall I came before your Honor on the opening day in October and I said this is not a classic tie.  You don't have to b[u]y product A in order to get product B..  In fact, our contract doesn't require you to buy anything.  I'll talk more about that. But it's really not a character[sic—contract].  Its an offer.  We will give you discounts if you b[u]y certain amounts of our[selves] products.  And we'll give you discounts on one if you b[u]y a certain amount of another, that's a reward, that's not a punishment, not a penalty, a word that they like to use[s] in their brief, we're not penalizing anybody.  We're [/RAOEZ--sic] [re]warding them if they want to be loyal customers.

Defendants' Opening Statement, June 12, 2006 Rough Transcript at 30:11-23 (emphasis added).

Yet, Amgen seeks to keep out of evidence the reaction of its customers.  A review of the customers' correspondence to Amgen about the APC contract will certainly reveal their states of mind on that issue.

In <u>Callahan v. A.E.V., Inc.</u>, 182 F.3d 237 (3d Cir. 1999), the Third Circuit reversed a district court's decision to grant summary judgment for defendants in an antitrust case, in part because the Third Circuit found that the district court had improperly ruled against the admissibility of customer statements concerning the defendants' pricing practices.  <u>Callahan</u> involved a suit by several small "mom and pop" beer distributorships, who brought suit against several large beer distributors, and their principal.  On defendants' summary judgment motion, plaintiffs sought to offer a variety of customer comments on the defendants' pricing practices.

The district court found this evidence inadmissible hearsay in granting summary judgment for defendants.  The Third Circuit reversed:

> In opposition to the defendants' motion for summary judgment, the plaintiffs offered deposition testimony concerning their customers.  **It included testimony of various plaintiffs that certain customers ceased purchasing beer from them after the Beer World stores opened, and that the customers stated that they had done so because the Beer World stores had cheaper beer.**
>
> …
>
> The District Court, relying on our decision in Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc., 63 F.3d 1267 (3d Cir. 1995), held this evidence inadmissible, finding that the plaintiffs' testimony concerning their customers' statements was inadmissible hearsay.
>
> …
>
> **We think that the District Court's dismissal of the plaintiffs' evidence on the basis of Stelwagon was inappropriate**.  The purpose for which the customers' statements are offered in this case differs in substance from the purpose for which the court in Stelwagon found them inadmissible.  In that case, the only evidence of actual loss, i.e., that customers stopped purchasing from the plaintiff, was the employees' reports that customers had said that they were no longer buying from the plaintiff because the plaintiff's competitors had lower prices.  We concluded that this evidence could not be used to prove such loss.  **While the plaintiffs here have also offered similar testimony that their customers told them that they were purchasing beer from the Beer World stores and not the plaintiffs, they offer it only for "the [limited] purpose of proving customer motive," for which purpose we found such evidence admissible under Rule 803(3)**.  Stelwagon, 63 F.3d at 1274.
>
> …
>
> In addition, however, the record contains other non-hearsay evidence of a type not before the court in Stelwagon, that the plaintiffs offer to prove the fact of loss, the issue for which the court in Stelwagon found the customers' statements inadmissible.  **Here, the plaintiffs themselves testified that they knew of customers who used to purchase beer from them, but no longer did.  This is direct evidence of an actual loss of customers.**  Although in Stelwagon we held that customers' hearsay statements were not admissible to prove lost business, the plaintiffs' own testimony about the actual behavior of their customers is not hearsay.  Rather, it is admissible evidence of lost business, although not of the reason therefore.  **Thus, in the present case, the plaintiffs' testimony that certain customers no longer purchased beer from them, coupled with their testimony concerning the customers' statements of their motive, which is admissible hearsay under Rule 803(3), are together evidence of the fact of damage.**

Callahan v. A.E.V., Inc., 182 F.3d at 252-53 (footnote omitted and emphasis added).

In Callahan, the Third Circuit was building upon the earlier Stelwagon decision that, under the Rule 803(3) "state of mind" exception to the hearsay rule, "the customer statements at

3

issue in this case **clearly were admissible** as evidence of why the customers were not purchasing Tarmac MAPs from Stelwagon." Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc., 63 F.3d 1267, 1274 n.16 (3d Cir. 1995) (holding, however, that the customer statements were not admissible, by themselves, to prove actual antitrust damages) (emphasis added), cert. denied, 516 U.S. 1172 (1996)

The Callahan court's ruling, that otherwise-hearsay customer statements are admissible to prove the states of mind of the customers, has been followed in Citizens Financial Group, Inc. v. Citizens National Bank of Evans City, 383 F.2d 110 (3d Cir. 2004) (finding customers' statements, regarding confusion over banks' similar trademarks, admissible as evidence of the declarant customers' states of mind), cert. denied, 544 U.S. 1018 (2005).

Callahan could not be more on point. Customer complaints about the APC contract are admissible because they go to the state of mind of the customers being presented with such contracts, as to whether they viewed the contracts in a similar light as Amgen has suggested to this Court. Just as the Stelwagon court noted that customer statements are "clearly" admissible as to why customers **are not purchasing** a product, so are such statements admissible here as to why customers **are purchasing** a product (i.e., Amgen's RBCGF drug, Aranesp).

Coupled with the direct evidence from Ortho witnesses regarding their loss of oncology clinic customers when the APC contracts were introduced, and Ortho's expert testimony on the nature of the APC contracts, such complaints go to the issue of the true nature of Amgen's APC contracts.

4

1286715v1

For the aforesaid reasons, Plaintiff Ortho Biotech Products, L.P. respectfully requests that this Court reverse its June 12th ruling, and admit evidence of customer complaints about the Amgen APC contract, as evidence of the states of mind of customers presented with the 2006 APC.

Dated: June 13, 2006                    /s/ DOUGLAS F. JOHNSON
                                        Douglas F. Johnson
                                        **EARP COHN P.C.**
                                        20 Brace Road, 4th Floor
                                        Cherry Hill, NJ  08034
                                        (856) 354-7700

                                        **PATTERSON BELKNAP WEBB & TYLER LLP**
                                        William F. Cavanaugh, Jr.
                                        Erik Haas
                                        1133 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 336-2000

                                        **CONSTANTINE CANNON PC**
                                        Lloyd Constantine
                                        Matthew L. Cantor
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        (212) 350-2700

                                        *Attorneys for Plaintiff*
                                        *Ortho Biotech Products, L.P.*

Of counsel:
    Kathryn A. Meisel, Esq.
    Johnson & Johnson

1286715v1